UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SAHAR ZAVAREH,<br><br>   Plaintiff,<br><br>v.<br><br>STATE OF NEVADA ex rel. BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION o.b.o. UNIVERSITY OF NEVADA, LAS VEGAS, et al.,<br><br>   Defendants. | Case No. 2:12-cv-02033-APG-PAL<br><br>**ORDER DISMISSING FEDERAL LAW CLAIMS** |

I. **BACKGROUND**

  This case arises from a dispute over whether officials at the University of Nevada, Las Vegas ("UNLV" or the "University") appropriately denied plaintiff Sahar Zavareh's ("Zavareh's") application for graduation from the Water Resource Management ("WRM") graduate program upon the University's decision that she had not fulfilled the program's academic requirements.

  On October 25, 2012, Zavareh filed her complaint in Nevada state court. (Dkt. No. 1-2.) She named as defendants:

  (1) UNLV, governed by the Board of Regents on behalf of the State of Nevada;
  (2) Dr. Neal Smatresk ("Smatresk"), President of UNLV, in his professional capacity;
  (3) Dr. Michael Bowers ("Bowers"), Interim Executive Vice President and Provost of UNLV, in his professional capacity;

  (4) Dr. Timothy Porter ("Porter"), Dean of the College of Sciences, in his professional capacity;
  (5) Dr. Michael Nicholl ("Nicholl"), Director of the WRM program, in his individual and professional capacities;
  (6) Dr. Javier Rodriguez ("Rodriguez"), Associate Dean of the College of Sciences, in his individual and professional capacities;
  (7) Dr. Ron Smith ("Smith"), Dean and Vice President for Research, UNLV Graduate College, in his individual capacity (via his estate) and professional capacity;
  (8) Dr. Kathryn Korgan ("Korgan"), Senior Associate Dean, UNLV Graduate College, in her individual and professional capacities;
  (9) Dr. Frederick Krauss ("Krauss"), Director, Graduate Student Services, in his individual and professional capacities;
  (10) Nicholle Booker ("Booker"), Graduate Advisor, College of Science and Graduate Affairs Coordinator, in her individual and professional capacities; and
  (11) Dr. Scott Nowicki ("Nowicki"), Assistant Professor in Residence (Geoscience Program) and Member of Zavareh's thesis committee, in his individual and professional capacities.

The Court refers to all defendants collectively as "Defendants" and to all the individual defendants as the "Individual Defendants."

  In pertinent part, Zavareh alleges as follows. In February 2010, UNLV offered her admission into the WRM Master's program. She alleges that she accepted this offer by enrolling, paying tuition, and foregoing other opportunities of employment and education, thereby forming a contract between her and the University. The terms of the contract, she alleges, were established by the UNLV bylaws and the 2009–2011 graduate catalog.

  Upon matriculation, UNLV appointed Smith as her graduate advisor. Sometime during 2010–2011, UNLV eliminated the Environmental Studies Program and denied tenure status to Smith. Zavareh then obtained Booker as her new graduate advisor and had to "reform her committee halfway through completion of her degree requirements." (Compl. ¶ 24.) By that point, she claims, she had already detrimentally relied upon the coursework authorized by Smith, including a three-unit course through the University of Ohio in India. During the period when she selected her coursework with Smith, the WRM department chair (Nicholl) was away on sabbatical.

  Upon Nicholl's return, Zavareh alleges he "intentionally interfered in the academic independence, evaluation, decisions and relationships between [her] and her advisor and her

2

committee." (Compl. ¶ 27.) She alleges that Nicholl campaigned her thesis committee to have her fail her thesis defense and that he denied her application for graduation without timely notice or any stated reason for such action. She alleges that Nowicki attempted to recuse himself from her thesis committee at the last minute to preclude a quorum. Then, Rodriguez, in collusion with Nicholl, allegedly denied her application for graduation a second time. Korgan allegedly represented that Smith withheld his approval of her thesis, such representation being impossible because Smith was allegedly terminally ill and unavailable on medical leave. Although she was denied graduation, her thesis was nonetheless approved. (Dkt. No. 15 at 2.)

Zavareh appealed the University's decision to deny her graduation application. She claims she was denied a "timely, transparent, neutral, and meaningful appeal" because (i) she "did not have notice of the adverse position against her by Nicholl, Rodriguez, Nowicki and Booker[;]" (ii) she did not obtain *written* notice of the grounds for the denial; (iii) Nicholl, Nowicki, Rodriguez, and Booker interfered with her attempts to appeal, developed post-hoc rationales for their actions, and imposed additional "onerous" coursework for her (referring, presumably, to an additional three-unit course); (iv) she was presented with a "Contract for Defense" with requirements only applicable to those who fail a thesis defense; (v) there were no written procedures for the graduate appeal committee; (vi) the appeal committee's outcome against her was predetermined; and (vii) there were problems of ex parte communication, witness tampering, and undue influence over the appeal committee members.

She pleads two claims for relief under federal statute: 42 U.S.C. § 1983 (violation of due process under the Fourteenth Amendment) and 42 U.S.C. § 1985(3) (conspiracy). She also pleads several state law claims: breach of contract, contract- and tort-based breaches of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and violation of due process under the Nevada Constitution. She seeks equitable relief in two forms: an injunction preventing UNLV from changing her "status" during the pendency of this case and a declaration that she has completed the requirements for her graduate degree. She seeks damages for lost

tuition, lost employment opportunity, lost future wages, lost reputation, and various forms of emotional distress.

On November 27, 2012, Defendants removed the case to this Court. On January 8, 2013, Defendants moved to dismiss under Rule 12(b)(6).[1] For the reasons set forth below, the Court GRANTS the motion and allows Zavareh 14 days to amend her complaint to attempt to state a claim under federal law.

## II. ANALYSIS

### A. Standing

Under the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), a plaintiff has Article III standing to seek injunctive or declaratory relief only if she demonstrates a likelihood of suffering the same injury in the future. "[P]laintiffs must demonstrate a 'credible threat' exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief." *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (quoting *Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983)). To have standing for equitable relief then, Zavareh must demonstrate that she is likely to suffer the same alleged injuries in the future: denial of her graduation application and a meaningless appeal process. Because she is still a student in the same graduate program at UNLV and apparently still desires the Master's degree which UNLV denied (or else she unlikely would not be seeking a declaration that she has completed the degree requirements), she has met the threshold standing requirement for equitable relief. There is at least a "credible threat" that UNLV will again deny her graduation application and that she will be subject to the same graduate appeals process.

Standing to seek monetary damages does not require comportment with *Lyons*. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In light of Defendants' failure to object to Zavareh's standing to seek monetary damages and her sufficient pleading of an "injury in fact"

---

[1] "Rule" refers to the Federal Rules of Civil Procedure.

4

1  fairly traceable to Defendants' conduct, Zavareh also has standing to pursue monetary damages.
2  *See id.*

3      **B.**    **Standard of Review – Rules 8 and 12(b)(6)**

4      A properly pled complaint must provide a "short and plain statement of the claim showing
5  that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S.
6  544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than
7  "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft*
8  *v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the
9  speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must
10 "contain[] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at
11 696 (internal quotation marks and citation omitted).

12     District courts must apply a two-step approach when considering motions to dismiss. *Id.*
13 at 679. First, the court must accept as true all well-pleaded factual allegations and draw all
14 reasonable inferences from the complaint in the plaintiff's favor. *Id.*; *Brown v. Elec. Arts, Inc.*,
15 724 F.3d 1235, 1247–48 (9th Cir. 2013). Legal conclusions, however, are not entitled to the same
16 assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*,
17 724 F.3d at 1248. Mere recitals of the elements of a cause of action, supported only by
18 conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. Second, the court must consider
19 whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A
20 claim is facially plausible when the complaint alleges facts that allow the court to draw a
21 reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 663. Where
22 the complaint does not permit the court to infer more than the mere possibility of misconduct, the
23 complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679
24 (internal quotation marks and citation omitted). When the claims have not crossed the line from
25 conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.
26 "Determining whether a complaint states a plausible claim for relief will ... be a context-specific

1  task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*,
2  556 U.S. at 679.

### C. Federal Claims

#### 1. 42 U.S.C. § 1983 — Due Process Clause of the Fourteenth Amendment

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

Section 1983 provides a mechanism for the private enforcement of substantive rights conferred by the U.S. Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "To state a claim under § 1983, a plaintiff must [1] allege the violation of a right secured by the Constitution and laws of the United States, and must [2] show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Zavareh claims that UNLV and its officials violated the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. Her Complaint is fairly imprecise, but she apparently asserts that (i) the allegedly arbitrary and capricious decisions by Rodriguez (in collusion with Nicholl) to deny her graduation application, and by the appeals committee affirming Rodriguez's decision, amount to substantive due process violations; and (ii) the allegedly meaningless appeals process constitutes a procedural due process violation.

"A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (internal quotation marks and citations omitted). "A protected property interest is present where an individual has a reasonable

6

expectation of entitlement deriving from existing rules or understandings that stem from an independent source such as state law." *Id.* Likewise, liberty interests can arise from the Constitution itself and "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

"The guarantee of substantive due process provides 'heightened protection against government interference with certain fundamental rights and liberty interests.'" *Krainski v. Nev. ex rel. Bd. of Regents of Nev. System of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). "To violate substantive due process, the alleged conduct must 'shock[] the conscience' and 'offend the community's sense of fair play and decency.'" *Marsh v. County of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012).

Procedural due process provides a different form of protection; it concerns the procedures by which a person's liberty or property interests are infringed. Although adequate notice and a meaningful opportunity to be heard are the "hallmarks" of procedural due process, the precise process which is "due" in any situation depends on context and the nature of the right allegedly infringed. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012).

Ultimately, substantive due process and procedural due process converge on the same broad issue: whether the government's action in depriving an individual of a liberty or property interest was arbitrary. "'[T]he touchstone of due process is protection of the individual against arbitrary action of government,' … whether the fault lies in a denial of fundamental procedural fairness … , or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).

          **a.**    **Eleventh Amendment Immunity**

Before examining whether Zavareh states a claim under Section 1983, which in turn requires a viable claim under the Due Process Clause, the Court clarifies who is a suable "person" under Section 1983.

The Eleventh Amendment to the U.S. Constitution "prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (citations omitted). "The Amendment ... enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S.261, 267 (1997). The Amendment also bars suits against state agencies and against state officials in their official capacity for money damages. *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1188 (9th Cir. 2012) (citations omitted).

There are two important exceptions to the Eleventh Amendment. First, the Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacity. *Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011). Second, it does not bar suits seeking damages against state officials in their individual capacity. *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

Put more succinctly, the following are not "persons" for the purposes of § 1983: states, state agencies, and state officials sued in their official capacities for money damages. However, local government units, such as cities, counties, and their officials and employees, are "persons" for the purposes of § 1983. *Monell v. Dep't of Soc. Servcs.*, 436 U.S. 658, 690 (1978).

The initial issue then is whether UNLV is an arm of the State of Nevada or a local government unit. This Court, the Ninth Circuit, and the Nevada Supreme Court have held that the University of Nevada is entitled to Eleventh Amendment protection as a state instrumentality. *Krainski v. Nev. ex rel. Bd. of Regents of Nev. System of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010); *Meza v. Lee*, 669 F. Supp. 325, 328 (D. Nev. 1987); *Johnson v. Univ. of Nev.*, 596 F. Supp. 175, 178 (D. Nev. 1984); *Cuzze v. Univ. & Cmty. College Sys. of Nev.*, 172 P.3d 131, 136 n.21 (Nev. 2007). Moreover, Nevada statute defines "state officer" to include "regent[s] of the University of Nevada." NRS § 293.109. UNLV is undoubtedly an arm of the State of Nevada.

Therefore, unless UNLV waived its sovereign immunity by removing this case to this Court, both the § 1983 claims against UNLV and the § 1983 claims for money damages against

the Individual Defendants must be dismissed. *See Lapides v. Bd. of Regents of the Univ. of Ga.*, 535 U.S. 613 (2002) (sovereign immunity is waivable). States may waive their Eleventh Amendment immunity by making an unequivocal statement that they have consented to suit in federal court. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06 (1990) ("In determining whether a State has waived such immunity, this Court applies a particularly strict standard: A waiver will be given effect only where stated by the most express language or by such overwhelming implication as [will] leave no room for any other reasonable construction." (internal quotation marks and citation omitted)).

The Supreme Court held in *Lapides* that if a state has consented to suit in state court, the state waives its Eleventh Amendment immunity by removing the case to federal court. 535 U.S. at 617. Nevada has waived its immunity for state-law claims in state court. NRS 41.031(1)–(2). Thus, the State is not immune in federal court with respect to removed state-law claims. *Lapides*, 535 U.S. at 617. Nevada's waiver of sovereign immunity does not extend to its "immunity from suit conferred by" the Eleventh Amendment. NRS 41.031(3). The Supreme Court in *Lapides* declined to "address the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court"—the precise situation in the instant case as to the removed federal claims. 535 U.S. at 617–18. The Ninth Circuit has likewise not addressed the issue. *Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly*, 572 F.3d 644, 662 n.20 (9th Cir. 2009) ("While our [prior] holding strongly suggests a broader interpretation of *Lapides*, our conclusion that the Director consented to suit in state court renders the issue moot for the purpose of this case."); *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 917 (9th Cir. 2003) ("We too find it unnecessary to reach the question whether removal of federal claims abrogates a state's Eleventh Amendment immunity.").

Other circuits, however, have determined that mere removal, without a prior consent to suit in state court, does not amount to a waiver of sovereign immunity. *Stewart v. N.C.*, 393 F.3d 484, 490 (4th Cir. 2005); *Watters v. Wash. Metro. Area Transit Auth.*, 295 F.3d 36, 42 n.13 (D.C. Cir. 2002). The District of Montana recently followed *Stewart*'s reasoning in holding that a state

that does not consent to suit in state court does not waive its sovereign immunity upon removing the case to federal court. *Wood v. Mon. Dep't of Revenue*, 826 F. Supp. 2d 1232, 1236 (D. Mon. 2011). "By removing the case, the state 'is merely [seeking] to have the sovereign immunity issue resolved by a federal court rather than a state court.'" *Id.* (quoting *Stewart*, 393 F.3d at 491). "To reach the ... conclusion ... that removal results in waiver ... would give plaintiffs an unfair tactical advantage because a state would be forced to abandon a potentially valid defense if it wants to remove the case to federal court." *Id.* This Court agrees with the logic and reasoning of *Wood* and reaches the same conclusion. UNLV did not waive its sovereign immunity as to the federal claims by removing this case to this Court.

Accordingly, the Court dismisses all § 1983 claims against UNLV and all § 1983 claims for money damages against the Individual Defendants in their official capacities. The only potentially cognizable § 1983 claims are against the Individual Defendants (1) in their official capacities for prospective declaratory and injunctive relief; and (2) in their individual capacities for money damages.

### b. Due Process Claims

As stated above, "[a] threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges*, 24 F.3d at 62. Zavareh fails to sufficiently plead either.

Zavareh alleges a "vested liberty interest in her reputation as a graduate student" and a "protected property interest in matriculation of a degree in which she was otherwise qualified and the financial commitments of a graduate student which include lost opportunities, earnings and fees." (Compl. ¶¶ 66–67.)

A liberty interest may be implicated "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). The Supreme Court has held that "'reputation alone, apart from some more tangible interests,' does not constitute 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Krainski*, 616 F.3d at

971 (quoting *Paul v. Davis*, 424 U.S. 693, 693 (1976)). Reputational harm is only cognizable under the Due Process Clause if "a plaintiff suffers stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law.'" *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2008) (quoting *Paul*, 424 U.S. at 711), *reversed on other grounds*, 131 S. Ct. 447 (2010). This standard is known as the "stigma-plus test." *Krainski*, 616 F.3d at 971.

Zavareh's pleadings fall short of the stigma-plus test for two reasons. First, she pleads no facts to support the conclusory allegation that her reputation has been harmed. She does not allege, for example, that UNLV published the facts that she did not graduate or that she had a troubled thesis defense. There is no indication that the graduation denial has stigmatized Zavareh in any material way. *See Constantineau*, 400 U.S. at 434–35 (finding stigma where police posted plaintiff's name on list that prohibited her from purchasing alcohol); *Paul*, 424 U.S. at 695 (defendant posted flyers naming plaintiff as a shoplifter); *Lantz v. Crate*, 268 F. App'x 548 (9th Cir. 2008) (defendant directly informed credit bureau that plaintiffs were operating their business in violation of state law); *Miller v. Cal.*, 355 F.3d 1172, 1178 (9th Cir. 2004) (plaintiff named as suspected child abuser).

Second, even if Zavareh had established stigma, she does not sufficiently plead the necessary "plus" component. Allegations of lost future income and psychological trauma are insufficient. *Krainski*, 616 F.3d at 971 (citing *Rolon v. Henneman*, 517 F.3d 140, 140, 148 (2d Cir. 2008) (humiliation, embarrassment, and emotional distress are not cognizable protected interests under *Paul*)). She has not lost her status as a graduate student in the WRM program, and, even if she had, that status is not protected under Nevada law (as explained below). Whether framed as a liberty or property interest, Zavareh's alleged reputational harm fails the stigma-plus test and therefore cannot be redressed under the Due Process Clause of the U.S. Constitution.

As to the asserted property interest, the Court is not aware of any binding authority holding that continued enrollment or the expectation of a degree at a Nevada state university is a protected property interest. Zavareh cites the Nevada Supreme Court for the proposition that an

advanced degree is a form of property known as a "career asset." *Heim v. Heim*, 763 P.2d 678, 682 (Nev. 1988). *Heim* is inapposite, however, for two reasons. First, *Heim* is a marital property case that addresses whether and how to split marital assets, including one spouse's "career asset" of an advanced degree. The Nevada Supreme Court did not hold that enrollment in a state university program that ostensibly leads to an advanced degree is itself a form of property. Second, and more to the point, Zavareh does not have an advanced degree.

Zavareh repeatedly argues that the University's bylaws, offer of admission, and graduate catalogs created an entitlement to a Master's degree upon her completion of the academic requirements. To the extent Zavareh is arguing that these University documents amount to an "independent source" of a constitutional property interest (e.g., *Wedges/Ledges*, 24 F.3d at 62), her argument fails because she cites to no particular provision in those documents. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 249 (6th Cir. 2003) (holding student had no property interest in continued enrollment in medical school where student only generally referenced university's student handbook). Nor did she attach these documents to the Complaint. Although some states confer a property interest in continued enrollment in a state university program -- generally upon the performance of some act by the student -- (*see e.g.*, *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986) (Colorado statute entitles state residents to a college education upon payment of tuition)), the State of Nevada apparently has not done so. Accordingly, Zavareh has no federally-protected property right in continued enrollment at UNLV or in a Master's Degree upon the completion of the relevant academic requirements.

Zavareh has not established a liberty or property interest that is protected under the Due Process Clause of the U.S. Constitution, thereby precluding any due process claims.

           **c.**     ***Iqbal* and *Twombly***

Even if Zavareh had established a liberty or property interest, the Court would dismiss her due process claims under the plausibility standard of *Twombly* and *Iqbal*. Booker's and Nicholl's apparently unexplained decision to reject the three-unit course Zavareh completed in India, and require an additional three-unit course, does not shock the conscience. *Marsh*, 680 F.3d at 1154.

Although Zavareh alleges an elaborate and sinister conspiracy to reject her thesis, she confirms in her opposition to Defendants' motion to dismiss that the committee approved her thesis. (Dkt. No. 15 at 2.) The only alleged substantive due process violation then is the graduation denial premised on the rejection of the three-unit course in India, an academic decision within the University's broad discretion. *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 ("When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."); *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n.6 (1978) ("University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.").

As to procedural due process, Zavareh alleges that she "did not have notice of the adverse position against her by Nicholl, Rodriguez, Nowicki and Booker." (Compl. ¶ 32.) Based on the Complaint, Zavareh apparently knew that the reason for the graduation denial was the failure to complete three course units. (*Id.* ¶¶ 24, 25, 32.) To the extent Zavareh argues that she did not have notice of the University's requirement for three more course units, the inconsistencies in the Complaint negate this argument. To the extent she argues that she did not have notice of the alleged conspiracy against her or that there were unspoken reasons why the University rejected her graduation request, the failure to sufficiently plead the existence of this conspiracy negates her argument. Nearly all of the other alleged procedural improprieties—ex parte communication, witness tampering, and undue influence over members of the appeal committee—are conclusory with no factual support. Zavareh provides some factual support for the allegation that Korgan misrepresented Smith's recommendations to the appeals committee, but this fact alone is insufficient to render the procedural due process claim plausible. Finally, the University was not required to give her written notice of the reasons she was denied graduation; oral notice was

sufficient. *Cf. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (oral notice sufficient to dismiss tenured public employee).

In sum, Zavareh fails to state a claim for either substantive due process or procedural due process. *Wedges/Ledges*, 24 F.3d at 62. Accordingly, she has failed to state a claim for relief under § 1983. *West v. Atkins*, 487 U.S. at 48. The Court dismisses Zavareh's § 1983 claims against the Individual Defendants under Rule 12(b)(6) for failure to state a claim. Consequently, the Court need not engage in a qualified immunity analysis for the Individual Defendants' liability for money damages.

### 2.  42 U.S.C. § 1985 — Conspiracy

Zavareh's constitutional conspiracy claim is properly characterized as a claim under § 1985(3).[2] To state a claim under § 1985(3),

> a complaint must allege that the defendants did (1) "conspire ... ." (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of (the) conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499, 502 (9th Cir. 1979) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). Although § 1985(3) reaches private conspiracies, the Eleventh Amendment protects state actors in the same manner as it does in § 1983 suits. *Raj v.*

---

[2] In relevant part, that statute provides:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ... ; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

*La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). Thus, the Court dismisses the § 1985(3) claims against the State of Nevada and the Individual Defendants in their official capacity.

The rights protected by § 1985(3) are "the right to be free from racial discrimination, the right of interstate travel, and the right to equal protection of the laws." *Reichardt*, 591 F.2d at 503. "*Griffin* ... create[d] a cause of action for any tortious interference with a legally-protected right if motivated by the requisite class-based animus[.]" *Id.* The Ninth Circuit has not held that due process violations fall within the protections of § 1985(3). *Peloz v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 524 (9th Cir. 1994). Assuming, *arguendo*, that due process claims are cognizable under § 1985(3), the Complaint nonetheless fails to allege class-based animus, let alone a conspiracy to deprive Zavareh of due process rights motivated by class-based animus. *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (holding § 1985(3) claim lacked legal merit where no class-based animus pled).

Her allegations of discrimination based on religion, ethnicity, and national origin appear only in her opposition to the motion to dismiss. When a plaintiff alleges new facts in her opposition to a motion to dismiss filed under Rule 12(b)(6), the Court generally must either (1) exclude and ignore the new allegations and consider the motion to dismiss as though the new facts had not been alleged, or (2) treat the defendant's motion as a motion for summary judgment under Rule 56. *See* FED. R. CIV. P. 12(d). The Court chooses to ignore Zavareh's new factual allegations. Consequently, the Court dismisses the § 1985(3) claims against the Individual Defendants in their personal capacity for failure to state a claim under Rule 12(b)(6).

**D.     State Claims / Supplemental Jurisdiction**

Upon dismissal of the federal claims under §§ 1983 and 1985(3), the remaining claims are based entirely upon state law. In the absence of any claims over which the court has original jurisdiction, the Court's exercise of supplemental jurisdiction is discretionary. 28 U.S.C. § 1367(c)(3). If Zavareh does not successfully amend her pleadings to state a claim over which this Court has subject matter jurisdiction, the Court will decline to exercise supplemental

jurisdiction and will *sua sponte* remand this case to the Nevada state court. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350–51, 357 (1988).

If Zavareh successfully amends the Complaint, the Court will address the state law claims as appropriate at that time.

### III. CONCLUSION

The Court hereby ORDERS:

1. The Fifth Claim for Relief (42 U.S.C. § 1983) is DISMISSED WITHOUT PREJUDICE.

2. The Sixth Claim for Relief (42 U.S.C. § 1985(3)) is DISMISSED WITHOUT PREJUDICE.

3. Zavareh is granted leave to amend the pleadings to attempt to state a claim for relief under federal law. If she chooses to do so, she shall file her Amended Complaint within 14 days after the date of entry of this Order. If she declines to do so, the Court will remand this case to the Nevada state court.

DATED this 17th day of October, 2013.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE